IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MOHAMMED HUSSAIN | * | |
| | * | |
| v. | * | Case No.: 1:08-cv-1658 |
| | * | |
| UNIVERSITY OF MARYLAND MEDICAL SYSTEMS CORP. | * | |

OPINION

In this action, Mohammed A. Hussain ("Plaintiff") alleges that Officer Rodney Corbin ("Officer Corbin"), an employee of the University of Maryland Medical Center ("the Hospital"), subjected Plaintiff, a patient at the Hospital, to discriminatory and tortious treatment. Specifically, Plaintiff's complaint alleges discrimination on the basis of religion, national origin, and race and torts of false imprisonment, assault, battery, defamation, negligence, and intentional infliction of emotional distress. Officer Corbin is not a party to this action. Instead, Plaintiff asserts all claims against the Hospital.

This action was originally filed in the Circuit Court for Baltimore County and was removed to this court on the ground that federal claims were asserted.

Now pending before the Court are the Hospital's motion for partial summary judgment and Plaintiff's motion for summary judgment. For the following reasons I will grant the Hospital's motion for summary judgment with respect to Plaintiff's federal claims, deny

1

Plaintiff's motion for summary judgment, and remand the case to the Circuit Court for Baltimore City, Maryland.

I. **Background**[1]

Plaintiff, a United States Citizen, was born in India and immigrated to the United States in 1972. (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem"), Ex. A at 8:5, 13:7.) Plaintiff has been a Muslim for his entire life. (*Id.*, Ex. A at 25:19.) On March 22, 2007, Plaintiff went to the Hospital to undergo a surgical procedure to treat oral cancer. (*Id.*, Ex. A at 32:2.) The surgery required a portion of Plaintiff's tongue to be removed. (*Id.*, Ex. A at 33:7.)

Upon arriving at the hospital, Plaintiff did not stop at the security desk to receive an identification badge. Instead he went immediately to the public bathroom in the hospital lobby. (*Id.*, Ex. A at 50:6-12.) Hospital policy requires visitors and patients to display identification badges while in the Hospital. (*Id.* Ex. G at 30:6-32:6.) However, it is not uncommon for patients and visitors to bypass the reception desk without receiving a badge. (*Id.*, Ex. G at 36:5-6; Ex. F at 59:18.)

Plaintiff's purpose in going to the bathroom was to conduct a religious practice known as "Wudu." Wudu is an Islamic custom requiring the washing of hands and feet prior to prayer. (*Id.*, Ex A. p. 39:16-43:19.) Plaintiff conducted Wudu by wiping a damp paper towel over his hands, elbows, and feet. (*Id*. at 59:3-62:13.) The Hospital bathroom at issue is a notorious "trouble spot." (*Id.*, Ex. F, p.80:15-19; Ex. G at 126:8-15.) On several occasions, homeless individuals have been escorted from the premises because they were using the bathroom to

---

[1] Because I am granting the Hospital's motion for summary judgment in part, the facts are presented in the light most favorable to the Plaintiff, the non-moving party. *See Lee v. York County Sch. Div*., 484 F.3d 687, 693 (4th Cir. 2007).

bathe. One individual also overdosed on narcotics while in the bathroom. (*Id.*, Ex. F at 80:15-19.)

As Plaintiff began to wash his feet, he caught the attention of Officer Corbin, who was off duty at the time and also using the bathroom. Officer Corbin claims that he was suspicious of Plaintiff because he was not wearing a Hospital identification badge and appeared to be using the bathroom to bathe. (*Id.*, Ex. F at 42:7-20.) Officer Corbin maintains that he was unaware Plaintiff was conducting a religious ritual. (*Id.*, Ex. F at 86:3-4.)

Officer Corbin confronted Plaintiff in the bathroom while he was conducting Wudu. (*Id.,* Ex. F at 42:13-20.) Officer Corbin was not dressed in a security officer uniform and was instead dressed in a Hospital Valet uniform.[2] (*Id.,* Ex. F at 53:1-54:1.) The back of his jacket said "Valet" and his employee identification was clipped to his belt, partially obscured by his jacket. (*Id.*, Ex. F at 53:22-55:6.) Nothing else about Officer Corbin's attire indicated that he was a Hospital employee. Officer Corbin did not identify himself to Plaintiff as a Hospital employee during their encounter in the bathroom. (*Id.*, Ex. F at 78:2-5.)

While in the bathroom, Plaintiff contends that Officer Corbin yelled at him "what are you doing?" (*Id.* Ex. A at 66:15-69:19.) Plaintiff did not respond at first. Instead he finished conducting Wudu and cleaned the sink area. (*Id.*, Ex. A at 78:21-79:7.) Officer Corbin then demanded that Plaintiff leave the bathroom "or else." (*Id.*, Ex. A at 76:20-77:10.) Plaintiff replied to Officer Corbin "who are you?" (*Id.*, Ex. A at 71:10.) Officer Corbin still did not identify himself as a Hospital employee. (*Id.*, Ex. A at 71:12) Next, Plaintiff alleges Officer Corbin "pushed" Plaintiff out of the bathroom door and into a wall, then intermittently "grabbed" Plaintiff's arm while leading him to the Hospital lobby. (*Id.*, Ex. A at 87:7-14, 95:19.) Officer Corbin did not say anything while they walked to the lobby; however, Plaintiff told Officer

---

[2] At the time of the incident, Officer Corbin worked extra shifts as a valet when not on duty as a security guard.

3

Corbin three times that he was a patient. (*Id*., Ex. A at 98:3.) Officer Corbin then left Plaintiff with a security guard, Mike Neely ("Officer Neely") and informed Officer Neely that Plaintiff was "shitting all over." (*Id*., Ex. A at 94:11.) Officer Corbin then returned to the valet post outside the hospital.[3]

Plaintiff does not claim that Officer Corbin made any statements indicative of a discriminatory motivation. Indeed, according to Plaintiff's deposition, the only statements Officer Corbin made to Plaintiff during the entire incident were some variation of "what are you doing," "why don't you have a security badge," and "get out of the bathroom or else." (*Id*., Ex. A at 93:6-20.)

## II. Standard of Review

A motion for summary judgment should be granted when the record establishes that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law of the cause of action determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine and summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

---

[3] The parties dispute the details of the encounter between Plaintiff and Officer Corbin. Officer Corbin testified that he never yelled at Plaintiff, but asked him in a reasonable tone of voice what he was doing in the bathroom. (*Id*., Ex. F at 42:18-20.) Officer Corbin claims that he stood at the bathroom exit and held the door open while Plaintiff finished washing and drying his hands. (*Id.,* Ex. F at 45:1-6.) Plaintiff then exited the bathroom of his own volition. Officer Corbin maintains that he did not touch Plaintiff and merely lifted his arm to direct Plaintiff toward the lobby. (*Id.* at 50:19.) However, Officer Corbin testified that while they were walking to the lobby, Plaintiff stopped abruptly, causing Officer Corbin to "bump into" him. (*Id.*, Ex. F at 76:9-13.) Officer Corbin claims that it was at this time that he identified himself as a security officer and directed him to a security podium to resolve the matter. (*Id.*, Ex. F. 76:18-22) Officer Corbin claims that he left Plaintiff with Officer Neely, telling him that he saw Plaintiff "washing up" in the bathroom. (*Id.* at 77:12-13.)

4

**III. Analysis**

    **a. Plaintiff's Federal Claims**

Summary judgment for the Hospital is appropriate with respect to Plaintiff's federal claims under 42 U.S.C. § 1981 and §1983 if no other reason than that they rest on the theory of respondeat superior.[4] There is no respondeat superior liability under either § 1981 or § 1983. *See Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) (same); *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701 (1989) (holding that a municipality cannot be held liable under a theory of respondeat superior for its employees violations of § 1981); *see also Crowley v. Prince George's County, et al.*, 890 F.2d 683, 685 (4th Cir. 1989) (same). Plaintiff seeks to hold the Hospital liable for the actions of its employee, Officer Corbin and therefore, the Hospital is entitled to summary judgment.[5]

To assert valid federal claims against the Hospital under 42 U.S.C. § 1981 or § 1983, Plaintiff must have alleged direct involvement by the Hospital in the events giving rise to the complaint. Plaintiff therefore must have alleged that his injuries were: 1) the result of an official policy or custom; 2) promulgated by the Hospital; and 3) caused the alleged discrimination. *See*

---

[4] Even if I were to reach the merits of Plaintiff's discrimination claims, I would rule in favor of the Hospital. Plaintiff has not raised an issue of material fact to demonstrate that the Hospital's non discriminatory justification for Plaintiff's treatment is pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .

[5] While Plaintiff notes in his Reply that Officer Corbin's past conduct is evidence of the Hospital's "direct" liability under § 1981 and § 1983 for failing to properly train and supervise Officer Corbin (Pl.'s Reply in Supp. of Mot. ("Pl.'s Reply") at 4), Plaintiff's Complaint makes no such allegation of direct liability. The claims in the Complaint relate only to Officer Corbin's interaction with Plaintiff on March 22, 2007. Therefore, the only claims properly pled are based on a theory of respondeat superior.

5

*Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). An official policy or custom could include: 1) an express policy or directive, *Crowley*, 890 F.2d at 685; 2) a pervasive and widespread practice, *Carter v. Morris*, 264 F.3d 215, 217 (4th Cir. 1999); or 3) an inadequate or deliberate failure to train employees in the face of constructive knowledge of employee conduct amounting to a pervasive and unreasonable risk of constitutional injury, *Randall v. Prince George's County, Maryland*, 302 F.3d 188, 206 (4th Cir. 2002). *See also Davis v. Durham Mental Health Dev. Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004). Plaintiff has presented no facts to support a reasonable conclusion that Plaintiff's injuries resulted from the Hospital's actions, policies or pervasive practices. Indeed Plaintiff has endeavored to show that Officer Corbin was in violation of Hospital policy. (*See* Pl.'s Mem. at 42.) Plaintiff has also not offered a single instance prior to the events underlying the instant case in which Officer Corbin engaged in any conduct that could be construed as risking constitutional injury.[6] Nor has Plaintiff raised facts to support a claim that the Hospital had constructive knowledge of any such conduct and was indifferent to Officer Corbin's training.

    **b. Plaintiff's State Law Claims**

Plaintiff has moved for summary judgment as to his state law claims. As noted in footnote 3, *supra*, the parties dispute what occurred during the encounter between Plaintiff and Officer Corbin. Therefore, it would appear that a genuine dispute of material fact exists that precludes Plaintiff from obtaining the summary judgment he seeks. However, because I am remanding the

---

[6] In support of his common law negligent supervision claim, Plaintiff submitted evidence that prior to the events giving rise to the instant case, Officer Corbin refused to admit a grandmother to the mother/baby ward because she did not have proper Hospital identification, and in a separate incident allegedly lost the driver's license of a Hospital visitor. (*See* Hospital's Mem in Supp of Mot. ("Hospital's Mem.") at 17.) In neither instance was there a risk of constitutional injury. Plaintiff also pointed to two additional incidents which occurred after the events underlying the instant case, and are therefore irrelevant to any constructive knowledge attributable to the Hospital prior to Officer Corbin's encounter with Plaintiff.

6

state law claims to the Circuit Court for Baltimore City, I will not decide Plaintiff's summary judgment motion but leave that decision to the Circuit Court for Baltimore City.

A separate order effecting the rulings made in this memorandum is being entered herewith.

DATE:  6/30/2010           __/s/_____
                           J. Frederick Motz
                           United States District Judge